**H.K. PORTER COMPANY, INC.,
a Corporation, Plaintiff,**

**v.**

**PENNSYLVANIA INSURANCE GUARANTY ASSOCIATION, an unincorporated association, Defendant.**

**Civ. A. No. 93–212.**

United States District Court,
W.D. Pennsylvania.

Feb. 9, 1995.

---

Meyer, Unkovic & Scott, Frederick J. Francis, Pittsburgh, PA, for plaintiff.

Gaca, Matis & Hamilton, Mark R. Hamilton, Pittsburgh, PA, for defendant.

### MEMORANDUM OPINION

AMBROSE, District Judge.

Pending before the Court is the Motion of Plaintiff, H.K. Porter Co., Inc. [hereinafter Porter], for Reconsideration (Docket #: 52). Porter asks this Court to reconsider a portion of its Opinion and Order dated January 3, 1995, wherein this Court found that Porter had only three covered claims against Defendant, the Pennsylvania Insurance Guaranty Association [hereinafter PIGA]. Oral Argument on the Motion for Reconsideration was held on February 7, 1995. Porter has filed a Memorandum of Law in support its Motion and also presented seven exhibits at the oral argument. PIGA has not filed a written response to the Motion. After careful consideration of Porter's Motion, the arguments of counsel for Porter and PIGA, and the materials submitted by Porter, Porter's Motion for Reconsideration will be denied.

Historically, this declaratory judgment action was initiated by Porter on February 12, 1993. Porter sought, *inter alia*, a declaration that PIGA was obligated to pay the full aggregate limits on three insurance policies issued by the now insolvent Integrity Insurance Company. Cross-motions for summary judgment on this issue were filed by Porter and PIGA. In an Opinion and Order dated January 3, 1995, this Court rejected Porter's argument that its claims under the Integrity policies were exempt from the $299,900.00 statutory limitation because the claims of Porter were based upon the claims of underlying claimants and found that Porter was limited in its recovery to three covered claims.

Porter challenges this Court's finding and argues that because "person" is defined to encompass both insureds and claimants under the PIGA Act, that the plain language of the PIGA Act dictates that the statutory limit may be applied separately to each of the underlying asbestos claims asserted against Porter. Porter cites the following additional cases in support of its argument: *Plymouth Rubber Co. v. Massachusetts Insurers Insolvency Fund*, No. 87–440 slip op. (Mass.Super.Ct. May 24, 1988), *Commercial Union Ins. Co. v. Sepco Corp.*, 1989 U.S.Dist. LEXIS 18378 (S.D.Ala.1989), *Pittsburgh Corning Corp. v. Pennsylvania Ins. Guar. Assoc.*, No: GD 91–7864 slip op. (Pa.C.P. Allegheny Cty., January 20, 1995). A careful review of these cases does not lead to the conclusion that they require a reversal of the previous decision.

In this Court's Opinion and Order dated January 3, 1995, we held that "the claims at issue [were] the claims of a person (Porter) for indemnification under the three Integrity policies." Opinion at 11. We noted, specifically, three sections of the PIGA Act which define "covered claim" and the powers and duties of PIGA. These sections provide:

(5)(a) **"Covered claim"** means an unpaid claim, including a claim for unearned premiums, which arises under a property and

casualty insurance policy of an insolvent insurer and is:

(i) *The claim of a person* who at the time of the insured event resulting in loss or liability was a resident of this Commonwealth ...

Pa.Stat.Ann. tit. 40 § 1701.103(5)(a)(i) (1992) (emphasis added).

(8) **"Person"** means an individual, a corporation, a partnership, an association, or any other holder of or claimant under a property and casualty insurance policy.

Pa.Stat.Ann. tit. 40 § 1701.103(8) (1992).

(b) Powers and Duties:

(1) The association shall:

(i) Be obligated to make payment to the extent of the covered claims of an insolvent insurer existing prior to the determination of said insurer's insolvency, and covered claims arising within thirty days after the determination of insolvency, or before the policy expiration date if less than thirty days after such determination ... but such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars ($100), and is less than three hundred thousand dollars ($300,000). In no event shall the association be obligated on a covered claim in an amount in excess of the obligation of the insolvent insurer under the policy under which the claim arises.

Pa.Stat.Ann. tit. 40 § 1701.201(b)(1)(i) (1992).

In rejecting Porter's assertion that its claims in this action encompass the claims of the underlying asbestos claimants, we distinguished *Connecticut Ins. Guar. Ass'n v. Union Carbide Corp.*, 217 Conn. 371, 585 A.2d 1216 (1991). Porter claims that this Court's distinction of *Union Carbide* was in error because

[t]his Court reasoned that the primary difference between the CIGA Act at issue in *Union Carbide* and the PIGA Act at issue here was that under the CIGA Act, a "covered claim" included the claim of either an insured or claimant, whereas under the PIGA Act, only an insured could present a covered claim. However, as stated,

under the PIGA Act, covered claims include claims of both insureds and claimants.

Porter's Memorandum of Law in Support of Motion for Reconsideration, p. 4.

This Court is aware that "person" is defined by statute as, among other things, a holder of or claimant under a property and casualty insurance policy. However, that is not the issue. The issue is who is the "person" making the claim in this case. Clearly, the "person" making the claim in this case is Porter.

Porter argues that the purpose of the PIGA Act would be furthered by its interpretation of covered claim. We acknowledge that the purpose of the PIGA Act is "[t]o provide a means for the payment of covered claims ... and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer ..." Pa.Stat.Ann. tit. 40 § 1701.102(1) (1992). Furthermore, we recognize that there are various policy arguments which support Porter's interpretation of the PIGA Act. *See e.g. Pittsburgh Corning Corp. v. Pennsylvania Ins. Guar. Assoc.*, GD91–7864, slip op. at 18–20 (Pa.C.P. Allegheny Cty. January 20, 1995). However, the clear language of the PIGA Act dictates that the covered claim is the claim of Porter for indemnification. We find no support in either the statute or the case law of this jurisdiction for Porter's assertion that its claims somehow encompass the claims of the underlying asbestos claimants. We believe that reading such a concept into the statute would violate the clear and express language of the Act.

In *Union Carbide*, the Connecticut court relied upon, *inter alia* language ("the claimant or insured is a resident of his state at the time of the insured event") which does not appear in the PIGA Act to support its conclusion that the covered claims at issue encompassed the claims of the underling tort claimants. *Union Carbide*, 585 A.2d at 1218, fn. 1.[1] Indeed, the additional cases cited by Porter in its Memorandum of Law in Support of Motion for Reconsideration involve

---

**1.** Interestingly, counsel for PIGA at oral argument represented that after the *Union Carbide* decision, the Connecticut legislature changed the CIGA Act to avoid this result.

guaranty acts which contain the same language ("the claimant or insured is a resident of this state") as the CIGA Act at issue in *Union Carbide*. These additional cases cited by Porter are therefore distinguishable. *See Commercial Union,* 1989 U.S.Dist. LEXIS at *2, *Plymouth Rubber,* No. 87–440, slip op. at 5.

Finally, we would note that the conclusion that Porter is the "person" with the covered claim is consistent with the position Porter adopted with respect to the residency issue raised in the cross-motions for summary judgment. In its brief, Porter argued that "Porter is not representing the injured parties in making claims against Integrity and PIGA." Porter further elaborated:

> In reviewing the interplay of issues in this case with the terminology of the Act, this Court must be cognizant that PIGA is confusing the concept of "claims" under the Act. The asbestos victims had *tort* claims against Porter; Porter has covered "claims" against PIGA ... This Litigation involves *Porter's* claims, *not* unpaid claimants' claims ... In this action, Porter is seeking indemnification from PIGA ... Thus PIGA's arguments concerning the residence of unpaid claimants, the indispensability of unpaid claimants and other guaranty funds and the $300,000 limit are irrelevant.

See Porter's Summary Brief in Support of Motion for Summary Judgment, p. 7, fn 4.

Porter makes a telling distinction between the "covered claims" that Porter has against PIGA and tort claims asbestos victims have against Porter. We find that this analysis supports the conclusion that the covered claims at issue here are the claims of a person—Porter—and are subject to the statutory limitation.